UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FELICIA GODBOLT,

        Plaintiff,

v.                                        Case No. 8:12-cv-1650-T-24 TBM

SAM'S EAST, INC.,

        Defendant.
_____/

**ORDER**

This cause comes before the Court on Defendant's Motion for Summary Judgment. (Doc. No. 18). Plaintiff opposes the motion. (Doc. No. 20). The Court held a hearing on the motion on September 5, 2013. As explained below, the Court grants the motion.

**I. Standard of Review**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. See Porter v. Ray, 461 F.3d 1315, 1320 (11th Cir. 2006)(citation omitted). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. See id. (citation omitted). When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. See id. (citation omitted).

**II. Background**

Plaintiff Felicia Godbolt, an African-American woman, was employed by Defendant Sam's East, Inc. from August 29, 2007 until September 16, 2011. During her employment, Plaintiff believes that she was subjected to race discrimination and retaliation. Plaintiff, however, fails to provide a factual background in her response brief, and as result, the Court takes most of its background from Defendant's motion for summary judgment.

Plaintiff began working for Defendant as a New Business Marketing Representative. During that time, Plaintiff felt that the then-Marketing Manager, John Mizell, had discriminated against her because of her race. Plaintiff complained about Mizell, and Plaintiff believes that her discrimination complaint led her to be promoted to the position of Check-Out Supervisor ("COS") in April of 2008 in order to get her away from the discrimination. (Pla. depo,[1] p. 83-84, 86-87).

Thereafter, in October of 2008, Plaintiff was promoted to the position of Membership/Marketing Team Leader ("M/M Team Leader"). (Pla. depo, p. 102-03). Plaintiff contends that she received this promotion because she complained about not being selected for the Manager-in-Training ("MIT") program. (Pla. depo, p. 103-04). As the M/M Team Leader, Plaintiff reported to then-Membership Assistant Manager, Rhonda Knudsen. (Pla. depo, p. 176).

On April 27, 2009, Plaintiff submitted a written complaint to Club Manager Theresa Garrett regarding Knudsen's mean and inequitable treatment towards Plaintiff and others. (Pla. depo, p. 188-89; Doc. No. 19-19). Additionally, on July 20, 22, and 23, 2009, Plaintiff called Defendant's Ethics Hotline to complain about Knudsen's treatment and to report that Plaintiff

---

[1]Plaintiff's deposition transcript is filed at Doc. No. 19-1.

believed that Knudsen was discriminating and retaliating against her.  (Doc. No. 20-6).  Finally, Plaintiff filed a charge of discrimination with the EEOC on September 4, 2009.[2]  (Doc. No. 19-7).  Plaintiff contends that in retaliation for these complaints, she received three fabricated coachings[3] and a three week suspension for alleged drug use.

Specifically, on July 18, 2009, Manager Melinda Labor gave Plaintiff a First Written Coaching for poor job performance.[4]  (Doc. No. 19-4).  On August 24, 2009, Labor gave Plaintiff a Second Written Coaching in connection with an evaluation that Plaintiff did for a subordinate.  (Doc. No. 19-15).  On October 19, 2009, Knudsen gave Plaintiff a Third Written Coaching for misreading an email and setting up a marketing event ("the 10 for $10 event"[5]) that should not have been set up, as well as for two meal exceptions.[6]  (Doc. No. 19-16).

Additionally, Plaintiff contends that Labor falsely told Garrett that Plaintiff was under the influence of drugs while in a training class, which led to Plaintiff being suspended from work

---

[2]Plaintiff states in her response brief that she filed a second charge of discrimination with the EEOC on October 8, 2009, but there is no record evidence to support this assertion.  (Doc. No. 20, p. 2).

[3]There are three levels of coaching under Defendant's Coaching for Improvement Policy—First, Second, and Third Written.  (Doc. No. 19-25, ¶ 5).  An employee may not receive two of the same levels of coaching within a 12-month period.  (Doc. No. 19 -25, ¶ 5).

[4]Notwithstanding the First Written Coaching, on July 28, 2009, Knudsen gave Plaintiff a forty-cent raise in connection with her annual review.  (Doc. No. 19-11).

[5]The 10 for $10 event was a promotion where a person could purchase a 10-day membership for $10.  (Pla. depo, p. 169).

[6]A meal exception is an occasion where an employee fails to clock in or out for a meal period, misses a meal period, takes a meal period that is too long or too short, or takes a meal period that is untimely.  (Doc. No. 19-25, ¶ 9).

while drug testing was conducted in September of 2009.[7]  (Pla. depo, p. 250-53).

Because Plaintiff made complaints of discrimination and retaliation, Human Resources Manager Michelle Stotts conducted an investigation.  (Pla. depo, p. 162, 191).  While Stotts concluded that Plaintiff's First and Second Written Coachings were not racially motivated, Stotts concluded that they were unwarranted due to the lack of documentary support.  (Doc. No. 19-25, ¶ 7).  Therefore, Stotts removed the First and Second Written Coachings from Plaintiff's file, and the former Third Written Coaching became a First Written Coaching.  (Doc. No. 19-25, ¶ 7-8).  Stotts did not remove the formerly Third Written Coaching to the extent that it related to the 10 for $10 event, because Plaintiff admitted that she had made a mistake.  (Pla. depo, p. 170; Doc. No. 19-25, ¶ 8).  Stotts did remove the two meal exceptions from the formerly Third Written Coaching.  (Doc. No. 19-25, ¶ 9).  Thus, after Stotts' investigation, the only coaching that remained was the October 19, 2009 coaching relating to the 10 for $10 event.  Additionally, Stotts concluded that Knudsen had displayed conduct unbecoming of a manager, and Stotts gave Knudsen a Third Written Coaching for poor managerial skills and lack of professionalism.  (Doc. No. 19-25, ¶ 4).

After Stotts' investigation, Plaintiff contends that Garrett got mad at Plaintiff for "going above her head."  (Pla. depo, p. 201-02).  As a result, Plaintiff asked to be transferred to a different store.  (Pla. depo, p. 205-07).  In November of 2009, Plaintiff was transferred to another store where she worked as a photo center technician.  (Doc. No. 19-24, ¶ 3).

In October of 2010, Plaintiff got injured at work while lifting waste from the photo lab

---

[7]Plaintiff was ultimately paid for the time that she was suspended from work. (Pla. depo, p. 252-53).

machine. (Pla. depo, p. 14, 47). In March of 2011, Plaintiff's doctor diagnosed her injury as tendinitis and carpal tunnel. (Pla. depo, p. 14, 48). Plaintiff was put on a leave of absence in March of 2011, due to her doctor's restrictions of not lifting more than one pound with her left hand and no more than ten pounds with her right hand. (Pla. depo, p. 50, 54). Plaintiff's position as a photo technician required that she be able to lift items weighing up to ten pounds without assistance. (Doc. No. 19-24; Pla. depo, p. 55). On September 16, 2011, Plaintiff was terminated because she had exhausted her available leave and she had not found an alternate position with Defendant that would not conflict with her doctor's lifting restrictions. (Doc. No. 19-24, ¶ 7). On February 23, 2012, the EEOC mailed Plaintiff a Notice of Right to Sue regarding her discrimination and retaliation charge that she had filed in September of 2009. Thereafter, on June 1, 2012, Plaintiff filed the instant case, in which she asserts two counts for race discrimination and retaliation under Title VII and the Florida Civil Rights Act ("FCRA").

### III. Motion for Summary Judgment

In the instant motion, Defendant moves for summary judgment on both the race discrimination and retaliation claims. The Court has already granted Defendant's motion to the extent that those claims were made under Title VII, because Plaintiff did not file her complaint within 90 days after she received the EEOC's Notice of Right to Sue. (Doc. No. 22). Additionally, the Court has already granted summary judgment to the extent that Plaintiff's FCRA discrimination claim was based on discrimination by Mizell. (Doc. No. 26).

With regards to Plaintiff's remaining FCRA claims, it was unclear from the record exactly what employment actions Plaintiff is challenging beyond the following: (1) that she was discriminated against by being denied a promotion into the MIT program, and (2) that she was

retaliated against when she received the suspension and the coachings on July 18, 2009, August 24, 2009, and October 19, 2009. As a result, the Court directed Plaintiff to identify any additional challenged employment actions; Plaintiff did not identify any additional challenged actions. (Doc. No. 26, 29, 30). As explained below, the Court grants Defendant summary judgment on Plaintiff's remaining FCRA claims.[8]

### A. Discrimination - MIT Program

Plaintiff contends that Defendant discriminated against her by denying her a promotion into the MIT program. In order to establish a prima facie case for failure to promote, Plaintiff "must show that: (1) she is a member of a protected class; (2) she was qualified for and applied for the promotion; (3) she was rejected despite these qualifications; and (4) other equally or less qualified employees who were not members of the protected class were promoted." Gray v. Vestavia Hills Board of Education, 317 Fed. Appx. 898, 902 (11th Cir. 2008)(citations omitted). Defendant moves for summary judgment on this claim, arguing that Plaintiff cannot establish a prima facie case because there is no evidence in the record that Plaintiff applied for the MIT program. See id. at 902-03. The Court agrees with Defendant, as there is no evidence in the record that Plaintiff selected the MIT program on the "Current Career Interests" section of her Career Preferences.[9] (Doc. No. 19-23, p. 3, ¶ 13; Doc. No. 19-26, p. 13). Furthermore, the

---

[8]Plaintiff's FCRA claims are analyzed under the same analytical framework as Title VII claims. Selby v. Tyco Healthcare Group, L.P., 301 Fed. Appx. 908, 911 (11th Cir. 2008).

[9]"Career Preference is an online system that allows Associates who are interested and qualified to pre-register their interest in positions prior to those positions becoming available. Through the Career Preference System, Associates are able to indicate positions in which they are currently interested, as well as their future career goals. Only those Associates who express a **current interest** in the position and meet the minimum requirements are considered for that position when it becomes available." (Doc. No. 19-23, p. 3-4, ¶ 14)(emphasis added).

record evidence shows that Plaintiff was trained in the process of applying for positions with Defendant, which required that she indicate her interest in the position on the "Current Career Interests" section of her Career Preferences. (Doc. No. 19-23, p. 4, ¶ 16; Doc. No. 19-23, Ex. E).

Plaintiff argues that the fact that she indicated her interest in general management positions in the "Future Goals" section of her Career Preferences was sufficient to indicate her current interest in, and apply for, the MIT program. The Court rejects this argument. The Career Preferences page makes clear that positions selected in the "Future Goals" section are positions that a person **may** be interested in pursuing in the future but that the person does not have a **current** interest in pursuing. (Doc. No. 19-26, p. 13). The fact that Plaintiff indicated that she may have been interested in pursuing management positions in the future was not sufficient to indicate a current interest in the MIT program. As such, the Court concludes that Plaintiff cannot establish a prima facie case for the failure to promote her to the MIT program, and Defendant is entitled to summary judgment on this claim.

### B.  Retaliation - Coachings and Suspension

Next, Plaintiff contends that Defendant retaliated against her when she received the September 2009 suspension and the coachings on July 18, 2009, August 24, 2009, and October 19, 2009. In order to establish a prima facie case of retaliation, Plaintiff must show that: (1) she engaged in a protected activity, (2) she suffered a materially adverse action, and (3) there was a causal connection between the protected activity and the materially adverse action. See Selby v. Tyco Healthcare Group, L.P., 301 Fed. Appx. 908, 912 (11th Cir. 2008). If Plaintiff establishes a prima facie case, then the burden shifts to Defendant to articulate a legitimate, non-discriminatory reason for its actions. See id. If Defendant proffers a legitimate, non-

discriminatory reason, then Plaintiff must show that Defendant's reason is pretextual. See id.

Defendant moves for summary judgment on this claim, arguing that: (1) it had a legitimate, non-discriminatory reason for the suspension and the October 19, 2009 coaching, and (2) the coachings were not materially adverse actions. As explained below, the Court agrees with Defendant.

**1. Suspension**

Plaintiff contends that Defendant retaliated against her by suspending her on September 3, 2009. However, Defendant has proffered a legitimate, non-discriminatory reason for the suspension—Defendant suspected Plaintiff of being on drugs. (Doc. No. 31). Specifically, Defendant submitted the affidavit of Garrett, in which she states the following:

> 3. On September 1, 2009, I received a report that [Plaintiff] kept putting her head down on the table and falling asleep during a training class. Shortly thereafter, I expressed to [Plaintiff] that I was concerned about her ability to drive that day since she had been falling asleep during the training class. In response, [Plaintiff] advised me that her medication was making her sleepy. I recommended that [Plaintiff] contact her doctor for her own safety and advise him of the medication's effects since her job required her to drive to and from sales calls.
>
> 4. On September 3, 2009, [Plaintiff] appeared dazed with puffy and glassy eyes. [Plaintiff's] words were sluggish and she was behaving sleepy and incoherent. I asked [Plaintiff] if she was okay, and she again responded that her medication was making her sleepy and tired.
> . . .
>
> 5. Based on the report and my own observation of [Plaintiff], I contacted the reasonable suspicion hotline on September 3 pursuant to [Defendant's] Alcohol and Drug Testing policies and procedures. [Plaintiff] was subsequently escorted to a drug testing facility for a drug test, and suspended without pay pending the results of the drug

test.

6. On September 11, 2009, I was notified that [Plaintiff] had tested negative for drug use. [Plaintiff] was then notified of the negative test results. [Plaintiff] was advised that she could return to work but that she needed to submit to a Fitness for Work evaluation pursuant to [Defendant's] Fitness for Work Policy, because of her behavior and concerns regarding her safety while driving to and from membership drives.

7. Further, [Plaintiff] was told that [Defendant] would compensate her for the time she was on suspension but that she would need to utilize personal, vacation, or sick time from September 12, 2009 until she underwent the Fitness for Work evaluation. [Defendant] compensated [Plaintiff] for the September 3, 2009 through September 12, 2009 time period.

8. On September 16, 2009, [Plaintiff] submitted a request for a medical leave of absence with a start date of September 16 and an anticipated return date of September 21. [Defendant] approved [Plaintiff's] leave request. . . .

9. [Plaitiff] did not return to work from her medical leave of absence until September 24, 2009. As required, [Plaintiff] underwent the Fitness for Duty examination, which cleared her to return to work.

(Doc. No. 31-1, p. 1-3).

At the hearing on Defendant's motion for summary judgment, Plaintiff did not argue that she did not, in fact, fall asleep in the training class, appear dazed with puffy and glassy eyes, speak in a sluggish manner, and/or behave in a sleepy and incoherent manner. Furthermore, Plaintiff has not sufficiently addressed Defendant's legitimate, non-discriminatory reason head on to rebut it:

> [A] plaintiff may prevail [in showing pretext] only by demonstrat[ing] that the proffered reason was not the true reason for

9

> the employment decision. . . . [The plaintiff] may succeed in this
> either directly by persuading the court that a discriminatory reason
> more likely motivated the employer or indirectly by showing that the
> employer's proffered explanation is unworthy of credence.

Selby, 301 Fed. Appx. at 912 (internal citation and quotation marks omitted). Instead, Plaintiff simply argues that she was not on drugs and Defendant's conduct was retaliatory. However, given Plaintiff's behavior and appearance, which Plaintiff does not submit record evidence to dispute, the Court agrees that Defendant has provided a legitimate, non-discriminatory reason for the suspension, which Plaintiff has not shown to be pretextual. As such, the Court concludes Defendant is entitled to summary judgment on the retaliation claim to the extent that it is based on the suspension.

### 2. Coachings

Plaintiff contends that Defendant retaliated against her for making complaints on April 27, 2009, July 20, 22, and 23, 2009, and her EEOC charge of discrimination on September 4, 2009. Specifically, Plaintiff contends that she received three fabricated coachings on July 18, 2009, August 24, 2009, and October 19, 2009.

Defendant responds that Plaintiff's retaliation claim based on these coachings fails, because: (1) Plaintiff admitted that she made an error with respect to the 10 for $10 event, which was part of the basis for the coaching on October 19, 2009; and (2) the three coachings are not materially adverse actions that can support a retaliation claim. As explained below, the Court agrees with Defendant.

### a. The 10 for $10 Event

Defendant points out that Plaintiff admitted that she made an error with respect to the 10 for $10 event, which was part of the basis for the coaching on October 19, 2009. Thus, Defendant has offered a legitimate, non-discriminatory reason for this coaching, to the extent that it is based on the 10 for $10 event. Plaintiff has not shown that this proffered reason is pretextual. Therefore, the Court concludes that this October 19, 2009 coaching, to the extent that it is based on the 10 for $10 event, cannot support Plaintiff's retaliation claim.

### b. Remaining Coachings

Next, Defendant argues that the three coachings are not materially adverse actions that can support a retaliation claim. In order for the coachings to support Plaintiff's retaliation claim, Plaintiff must show that a reasonable employee would have found the coachings materially adverse, such that the coachings might have dissuaded a reasonable worker from making or supporting a charge of discrimination. Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53, 68 (2006)(citations omitted). This is because "[t]he anti-retaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." See id. at 67.

Plaintiff, however, has not shown that she was injured or harmed by the coachings or that it had any significant impact on her employment. This is fatal to her claim. See Hall v. Dekalb County Government, 503 Fed. Appx. 781, 790 (11th Cir. 2013)(concluding that a written counseling was not a materially adverse action because the plaintiff had failed to allege that it had any significant impact on his employment). In fact, despite the July coaching, Plaintiff received a forty-cent raise in connection with her annual review on July 28, 2009. Furthermore,

the July 18, 2009 coaching did not dissuade her from making a complaint later in July, nor did the July and August coachings dissuade her from filing a charge of discrimination with the EEOC on September 4, 2009.  See Morales v. Georgia Department of Human Resources, 446 Fed. Appx. 179, 184 (11th Cir. 2011)(noting that the alleged adverse action did not dissuade the plaintiff from making another charge of discrimination).  Accordingly, the Court agrees with Defendant that, within the context of the facts of this case, the three coachings at issue were not materially adverse actions that could support a retaliation claim.  Therefore, the Court concludes that Defendant is entitled to summary judgment on the retaliation claim to the extent that it is based on the coachings.

## IV.  Conclusion

Accordingly, it is ORDERED AND ADJUDGED that Defendant's Motion for Summary Judgment (Doc. No. 18) is **GRANTED.**  The Clerk is directed to enter judgment in favor of Defendant and to close this case.

**DONE AND ORDERED** at Tampa, Florida, this 6th day of September, 2013.

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record